UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-61385-CIV-LENARD/DUBÉ

MESSILINA PARKS,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #19) and the Motion for Summary Judgment filed by the Defendant (D.E. #20) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Messilina Parks (hereinafter "Parks" or "Plaintiff").

### I. FACTS

Parks filed applications for supplemental security income (hereinafter "SSI") and disability insurance benefits (hereinafter "DIB") on July 8, 2008, which asserted disability as of November 30, 2007. (R. 90-96).[1] The applications were denied initially and on reconsideration. (R.44-55, 61-65). Following a hearing on October 19, 2009 (R. 23-34), the ALJ issued a decision denying the request for supplemental security income and disability insurance benefits. (R. 8-18). On June 4, 2010, the

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

Appeals Council denied a request for review. (R. 1-4).

The Plaintiff, age 42 at the time of the hearing on October 19, 2009, testified she had been a cashier in a school cafeteria. Parks asserted she had 3 daughters and 1 son ranging in ages from 12 to 25. (R. 26). The Plaintiff testified she had an enlarged heart and congestive heart failure. Parks testified her last pregnancy "caused the fluid to go around [her] heart." (R. 27). The Plaintiff asserted the symptoms included shortness of breath. (R. 27).

According to the Plaintiff, on a typical day she would lay down. Parks she did not drive or take her children to school. (R. 28). Parks testified her daughters took care of the kids as they were "big kids" and the only one she had "to look after is the 12-year-old" who "helps [her] out a lot". (R. 29). When asked by the ALJ how she felt, the Plaintiff asserted that prior to the hearing she had been sitting a long time and "[her] pain ha[d] started." The Plaintiff testified the pain in her back went down her left leg making walking difficult. (R. 29).

When asked by the ALJ if the Plaintiff had any procedure performed on her heart to help her with her breathing, the Plaintiff indicated she did not but testified she took Lasix "so the fluid doesn't come back." (R. 29). Parks asserted she watched television, "just movies." The Plaintiff stated she is not able to work as a receptionist due to her back. The Plaintiff testified she could sit for 5 or 6 minutes. (R. 30).

Counsel for the Plaintiff asked Parks why she was wearing a brace on her right arm and Parks asserted it was for "carpal tunnel, [her] poor circulation." (R. 30). The Plaintiff further asserted she was right-hand dominant and had trouble holding onto "basically everything." (R. 30-31). The Plaintiff claimed she could not pull herself up and could not cook because she was unable to hold the pots and stand for long periods of time. Parks asserted her daughters buttoned her clothes and when asked if she had any difficulties taking a shower or getting ready, the Plaintiff asserted that

she "tried one on [her] own" and she fell. (R. 31). The Plaintiff testified she did not go out to see friends or go out with people. (R. 32).

According to the Plaintiff, she did not want to leave her room "maybe three" times a week and her daughter would feed and bathe her, due to "running pain" in her neck and back. (R. 32-33). The Plaintiff testified the pain would "spread out" and continue down her back to her left arm and legs in a sharp and throbbing pain that "comes and go." (R. 33). The Plaintiff asserted she took Percocet and "Oxy 30s" for the pain and the side effects included memory loss. (R. 33). The Plaintiff further asserted she took blood pressure medication as well as Zoloft for depression, and the side effect was that it "just keeps [her] more depressed." (R. 33-34).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in her Motion for Summary Judgment shows that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had the following impairments: chronic heart failure, back disorder, hypertension, diabetes mellitus, carpal tunnel syndrome and depression. (R. 13). The ALJ determined the Plaintiff did not have an impairment or combination of impairments that significantly limited the Plaintiff's ability to perform basic work-related activities for 12 consecutive months, and therefore, the ALJ determined the Plaintiff did not have a severe impairment or combination of impairments. (R. 13). Additionally, the ALJ found that the Plaintiff did not have a physical or mental impairment or combination of impairments that significantly limited her ability to perform basic work activities, and therefore, a finding of not disabled was appropriate. (R. 17).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.

4

Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that he is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous

work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ erred by finding the Plaintiff did not have a severe impairment.

The determination of whether an impairment is severe or not at step two of the sequential analysis is a threshold inquiry. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). The court in McDaniel elaborated on the requirements for a finding of severity as follows:

> It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.

McDaniel, 800 F.2d at 1031; see also, Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987). It is the duty of the ALJ to fully develop the record. See, Graham v. Apfel, 129 F.3d 1420, 1422-23 (11th Cir. 1997). Development of a full record may include ordering a consultative examination to enable the ALJ to make an informed decision. Hollawday v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988); West v. Barnhart, 300 F.Supp.2d 1264, 1271 (S.D. Fla. .2003).

In the instant matter, the ALJ cited to the medical evaluation of Gary B. Schwartz, M.D. (R. 154-156), Nancy Erickson, D.O., (R. 158-161), medical records from Innovative Health and Pain Care Options (R. 438-459), The Centre for Internal Medicine (R. 332-360), a Residual Functional Capacity Questionnaire completed by Nancy Pyram-Bernard (R. 361-365), a psychological evaluation performed by Beatriz Cabrera, Psy.D. (R. 366-367), and medical records from H&L Medical Specialist, Inc., (R. 415-426) to determine if Parks had no impairment or combination of

6

impairments that significantly limited her ability to perform basic work-related activities. (R. 13).

However, a number of medical records cited by the ALJ documented the Plaintiff's history of impairments of chronic lower back and neck pain. For example, medical records from Innovative HealthCare Options documented chronic lower back and chronic neck pain in 2007 and 2008. (R. 460-473) and medical records from Innovative Health & Pain Care Options documented a history of treatment of the Plaintiff's midline tenderness-spasm of the back in 2008 and 2009. (R. 438-459). Additionally, medical notes from H&L Medical Specialist dated July 23, 2009 and August 6, 2009 documented the Plaintiff with a diagnoses of chronic pain and cervical radiculopathy. (R. 415-417).

This Court notes that while medical records from H&L Medical Specialist documented pain that comes and goes, such pain was documented to occur over a period of several years. (R. 416). Moreover, H&L Medical Specialists diagnosed the Plaintiff with chronic back pain and cervical radiculopathy and referred the Plaintiff to a neurosurgeon and a pain management specialist. (R. 415-416). The medical record documented such referrals to a pain management specialist for chronic low back pain on July 23, 2009 (R. 421) as well as a referral to a neurosurgeon based on a diagnosis of cervical HNP (herniated nucleus pulposus). (R. 425). Furthermore, an MRI of the Plaintiff's cervical spine performed on July 28, 2009, indicated a reversal of lordosis with some canal stenosis at the C3-C4 areas as well as disc disease on protrusion change at C6-C7. (R. 413).

The burden to demonstrate a "severe" impairment is light, and the Court finds the opinions given by Innovative HealthCare Options, Innovative Health & Pain Care Options and H&L Medical Specialist were enough to at least meet this burden. Accordingly, this Court agrees with the Plaintiff and finds that the Plaintiff had severe impairments of lower back and lower neck pain. Upon remand the ALJ shall determine if the Plaintiff's other impairments warrant a finding of "severe" pursuant

to Social Security regulations.

Additionally, the Plaintiff's remaining arguments are that the ALJ failed to properly refute the opinion of the treating physician, and did not afford the Plaintiff a full and fair hearing due to an absence of impartiality. The Court's determination reached in the Plaintiff's first argument impacts the aforementioned remaining two arguments. The ALJ shall also reevaluate the severity of the Plaintiff's impairments. Therefore, this Court will not address these issues, but on remand, the ALJ shall address. Accordingly, while remand is required, the Court does not find an award of benefits is warranted at this time.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was not supported by substantial evidence and that the correct legal standards were not applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **REVERSED and REMANDED** for further proceedings consistent with this Report and Recommendation. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #19) should be **GRANTED in part** and the Motion for Summary Judgment filed by the Defendant (D.E. #20) should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Joan A. Lenard, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this __20__ day of April, 2011.

_____
ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE